UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald William HOGAN,
Defendant–Appellant.

No. 94–2023.

United States Court of Appeals,
Tenth Circuit.

Oct. 28, 1994.

Stephen P. McCue, Supervisory Asst. Federal Public Defender, Albuquerque, NM, for defendant-appellant.

David N. Williams, Asst. U.S. Atty. (John J. Kelly, U.S. Atty., and Louis E. Valencia, Asst. U.S. Atty., on the brief), Albuquerque, NM, for plaintiff-appellee.

Before BALDOCK, SETH, and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

■ Appellant Donald William Hogan was arrested pursuant to a warrant in front of his house on suspicion of murder. After he was arrested, police officers conducted a "protective sweep" of his yard and home. During this time, officers secured and towed away a 1965 pickup truck with a camper shell to a storage yard. After obtaining a search warrant for the camper, officers searched it and found a gun. Appellant was convicted in the United States District Court for the District of New Mexico of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g) and was sentenced as an Armed Career Criminal under 18 U.S.C. § 924(e). Appellant claims on appeal that the district court erred in denying his motion to suppress the gun and secondly that his sentence was improperly enhanced. We review the factual findings of the district court using a clearly erroneous standard while determining the legal questions de novo. *United States v. Parra*, 2 F.3d 1058, 1063 (10th Cir.1993).

When police officers went to Hogan's home to execute the arrest warrant, they ordered him to come out into the street. He complied and was arrested outside his fence in front of his house. After Hogan was "secured," the officers spoke to two other people who were on Hogan's property, Hogan's former girlfriend, Ms. McCullough, and her friend. Several officers also entered the property for a protective sweep. The officers did not leave the scene until approximately two hours later. During this time, detectives photographed the scene and removed many articles from the house. We are not concerned with the items found inside the house because they were not presented as evidence at trial. *See United States v. Occhipinti*, 998 F.2d 791, 800 (10th Cir.1993).

The seized camper that is the subject of this appeal was parked inside the fence and was inoperable. Officers had the keys, yet towed it away and sought a search warrant. The warrant was obtained that evening and the search which was executed the following day revealed a "rusted and partially disassembled" revolver, the frame of which was found inside a shoe, the grips in another. The officers also found, among other items, a holster inside a travel bag in the camper.

Appellant's first contention is that the police officers conducted an illegal protective sweep of the premises, improperly seized his camper and used information obtained during the illegal sweep to obtain a search warrant. Hogan claims that the sweep was improper because it lasted for over two hours, that evidence was improperly obtained during that time and there was no evidence that a sweep was necessary for officer safety. Therefore, the gun should be suppressed as the fruit of an illegal search.

In *United States v. Soria*, 959 F.2d 855, 857 (10th Cir.1992) (citing *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)), this court stated:

> "A protective sweep is not a full search, but rather a quick, cursory inspection of the premises, permitted when police officers reasonably believe, based on specific and articulable facts, that the area to be swept harbors an individual posing danger to those on the arrest scene."

This circuit has upheld protective sweep warrantless searches based upon probable cause and exigent circumstances. *See Soria*, 959 F.2d 855 (protective sweep of defendant's auto shop proper when defendant was arrested during drug transaction close to the shop where officers believed drug dealing activities had taken place and others may have been hiding inside); *United States v. Tisdale*, 921 F.2d 1095 (10th Cir.1990) (protective sweep proper where officers saw defendant, who had history of firearms violations, flee

from trailer and heard gunshots); *United States v. Mabry,* 809 F.2d 671 (10th Cir.1987) (protective sweep upheld where officers suspected drug dealer would become suspicious of delay in return of buyer and officers feared others would be present who would pose a danger and that evidence would be destroyed while waiting for a search warrant).

The government justified the protective sweep as a precaution because the officers reasonably believed that more than one person had been involved in the murder for which Hogan was a suspect. Furthermore, the officers claim that they believed that Hogan's former girlfriend had left her child unattended in the house. While acknowledging that an officer did look inside the camper, the district court found the officer's testimony credible and mentioned nothing about the protective sweep other than to state that one had occurred, instead focusing on whether probable cause existed to support the search warrants.

■ Given the narrow scope of a protective sweep and the exigent circumstances found in other cases in this circuit to support a proper sweep, we find that the rationale proffered by the officer for a protective sweep does not rise to the level necessary to support any intrusion into Appellant's house and yard for officer safety. There was no indication that the officers were in danger from a hidden accomplice on that day. The fact that the officers had evidence that an accomplice was involved in the murder does not equate to evidence that some person would be hiding out in Hogan's house a month after the event and that officer safety was threatened. Hogan was not home when they first arrived and they were not chasing him from a crime scene. A protective sweep is "appropriate only where officers reasonably perceive an immediate danger to their safety." *United States v. Owens,* 782 F.2d 146, 151 (10th Cir.1986). The fact that officers suspected that a child may have been inside in no way relates to officer safety, the goal of a protective sweep.

■ Additionally, the government does not counter Appellant's claim that the sweep lasted two hours. It is unclear whether the sweep lasted a few minutes or the entire two hours. However, we do know that on the premises during those two hours were the arresting officer, his partner, two Bernalillo County Sheriff officers, an unspecified number of criminalistics personnel and an assistant district attorney. If we assume that the officers initially had justification for a protective sweep, once the officers discovered that nobody else was in the house, the sweep should have ended. "The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Maryland v. Buie,* 494 U.S. at 335–36, 110 S.Ct. at 1099. Essentially, it appears that once inside Hogan's property, officers went on a fishing expedition for evidence linking Hogan to the murder. This greatly exceeded the permissible scope of a protective sweep. The collection of items, lasting for two hours, clearly exceeds a protective sweep which "is *narrowly confined* to a cursory visual inspection of those places *in which a person might be hiding.*" *Parra,* 2 F.3d at 1066 n. 4 (quoting *Maryland v. Buie,* 494 U.S. at 327, 110 S.Ct. at 1094).

Contrary to Appellant's assertions, it appears from the officer's testimony that the protective sweep could have truly been cursory and ended before he had a conversation with Ms. McCullough, a few minutes after the arrest. Transcript of Suppression Hearing at 22. ("I talked to Ms. McCullough out in front of the residence following the protective sweep.") Of course, this does not explain why the officers continued to explore the property prior to obtaining search warrants and seizing vehicles. If the sweep only lasted a few minutes, the justification is still uncertain. In contrast to the officer's claim for a need to protect officer safety, he agrees that "[he] could have just put Mr. Hogan in the car and driven away" after the initial arrest. *Id.* at 35. This statement calls into question the need for a protective sweep at all, and we find that the protective sweep was improper.

■ Given that the sweep was improper, if the evidence supports a finding that the offi-

cer had independent knowledge of the camper such that probable cause existed prior to the protective sweep, then the gun was properly admitted. *Murray v. United States,* 487 U.S. 533, 537–38, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988); *Segura v. United States,* 468 U.S. 796, 813–14, 104 S.Ct. 3380, 3389–90, 82 L.Ed.2d 599 (1984).

Hogan claims that the officer did not know about the camper until he entered the property for the protective sweep and that because the sweep was improper, the knowledge gained from the sweep that formed the basis for a search warrant was wrongfully gained and taints the warrant. Therefore, the gun should have been suppressed as the fruit of an illegal search. Hogan claims that the officer did not seek the search warrant until an hour after the arrest. Furthermore, the officer included information in the affidavit supporting the search warrant about the camper after the protective sweep during which time an officer looked inside the camper and spoke to Hogan's former girlfriend about the camper. Hogan claims that since the district court found that the protective sweep was proper, if we find that it was not, remand is necessary for a determination of whether the illegal sweep tainted the warrant. *See United States v. Restrepo,* 966 F.2d 964, 971–72 (5th Cir.1992). We do not find that a remand is necessary for this issue as we agree with the court that nothing gained during the protective sweep served as a basis for probable cause to support the warrant.

■ The government claims that the information concerning the camper was not gained during the sweep because the camper had been seen in prior surveillance. It was merely the year of the truck and camper that was added to the affidavit for a warrant, which officers learned while on the property. Moreover, the seizure of the camper was proper because of the exigent circumstances created by the mobility of the camper and because they had probable cause to believe that the camper contained evidence used during the alleged murder. Hogan does not contest the district court's finding of probable cause to search the camper. According to the officer, a search warrant was not obtained prior to the time the arrest warrant was executed because they did not know until the day of the arrest that Ms. McCullough intended to tow away the camper.

It appears that the officers gained nothing during the protective sweep that tainted the subsequent warrant. Although the protective sweep far exceeded the permissible scope, nothing observed during that time tainted the search warrant later obtained. The arrest warrant was valid. Speaking to the other people on the premises was not improper. It was from this conversation that the need to seize the camper was realized. Testimony supports the government's position that the officer knew about the camper prior to the arrest and therefore gained nothing from the protective sweep.

■ Hogan's second claim on appeal is that the district court erred in sentencing him as an Armed Career Criminal under 18 U.S.C. § 924(e). Under this section, a defendant convicted under § 922(g) who has three prior convictions for violent felonies is subject to a minimum sentence of fifteen years. Section 924(e)(2)(B) defines a violent felony as

> "any crime punishable by imprisonment for a term exceeding one year ... that—
>
> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another...."

The government listed three of Hogan's prior convictions in the Enhancement Information given to the judge which make Hogan eligible for sentence enhancement. These were robbery, aggravated robbery, and first degree burglary, all of which qualify as a violent felony. However, during sentencing, the court listed the three offenses as first degree burglary, motor vehicle theft and aggravated robbery yet stated that Appellant was eligible for sentencing under the Armed Career Criminal Act. Clearly, the motor vehicle theft conviction does not apply because the actual crime did not involve the

threatened use of force. Apparently, Hogan took a motorcycle for a test drive and never returned. Both parties agree that this does not qualify as a violent felony.

The question on appeal is whether this type of error constitutes a clerical error or a serious error in sentencing. Hogan can properly be sentenced under the Armed Career Criminal Act based on the convictions listed in the Enhancement Information. Hogan contends that remand is impermissible because it would subject him to double jeopardy. This claim is without merit.

> "In most cases, the courts' power to alter or correct sentences has been recognized as co-extensive with the courts' basic sentencing power, extending through the end of the direct appeals and retrial process, limited only by the constitutional finality associated with acquittal on the merits."

*United States v. Earley,* 816 F.2d 1428, 1433 (10th Cir.1987). The cases relied on by Hogan concern the sentencing phase of death penalty cases and are not applicable to the situation here. *See Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984); *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). Here, evidence of Hogan's prior violent felonies were considered by the judge and by statute suitable to sentence Hogan as an Armed Career Criminal. We must remand to the district court for a clarification as to whether it made a mistake by merely citing the wrong crime, motor vehicle theft instead of robbery, or if it relied on a crime which was improper for enhancement purposes.

Consequently, we REMAND to the district court for a clarification of the offenses relied on in sentencing, and we AFFIRM the district court's denial of the suppression motion.